**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPYRA GmbH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: |
| | ) |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff Spyra GmbH ("Plaintiff" or "Spyra") hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on **Schedule A** attached hereto (collectively, "Defendants"):

**INTRODUCTION**

1. This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's copyrights, which are covered by at least U.S. Copyright Office Registration No. VA 2-277-357, being a registration for the toy apparatus itself (the "SPYRA Copyright Registration"). The SPYRA Copyright Registration is valid, subsisting, and in full force and effect. A true and correct copy of the federal copyright registration certificate for the SPYRA Copyright Registration, as well as the images of the deposit for the same, is attached hereto as **Exhibit 1**. The Defendants likewise advertise, market and/or sell their unauthorized and illegal products embodying Plaintiff's copyright by reference to the same name and design as Plaintiff's genuine products, which causes further confusion and deception in the marketplace.

2. The Defendants create numerous fully interactive commercial internet stores operating under the Defendant domain names and the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). The Defendants design the Defendant Internet Stores to appear to be selling Plaintiff's genuine products while actually selling inferior imitations of Plaintiff's products. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's copyrights, as well as to protect unknowing consumers from purchasing unauthorized SPYRA products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable copyrights and goodwill as a result of Defendants' actions and so Plaintiff seeks injunctive and monetary relief.

3. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in New York and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in New York and in this Judicial District. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

**JURISDICTION AND VENUE**

4. This Court has original subject matter jurisdiction over the copyright claim pursuant to the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.This Court has original subject matter jurisdiction over the false designation of origin claim in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

5.      This Court has jurisdiction over the unfair deceptive trade practices claim in this action that arise under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, because each of the Defendants directly targets consumers in the United States, including New York, through at least the Defendant Internet Stores. Specifically, Defendants are reaching out to do business with New York residents by operating one or more commercial, interactive Internet Stores through which New York residents can purchase unauthorized and illegal products embodying Plaintiff's copyrights, that are marketed by reference to the same names and marks by which Plaintiff's genuine SPYRA products are marketed, one name and mark being for example, "SPYRA." Each of the Defendants has targeted sales from New York residents by operating online stores that offer shipping to the United States, including New York, accept payment in U.S. dollars, and, on information and belief, has sold unauthorized and illegal products embodying Plaintiff's federally registered copyright to residents of New York. Each of the Defendants is committing tortious acts in New York, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of New York. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of copyright infringement in this judicial district, do substantial business in the judicial district, have registered agents in this judicial district, and reside or may be found in this district.

## THE PLAINTIFF

7.      Plaintiff Spyra is a corporation organized and existing under the laws of Germany with its principal place of business in Munich, Germany, and is the owner of the SPYRA Copyright Registration, with its federal registration attached as Exhibit 1.

8. Spyra has earned an international reputation for innovation in the toy industry and is credited for reinventing the toy water gun.

9. SPYRA designed, invented, and caused to subsist in material form the original SPYRA Product from 2018 to 2019 and first published the original SPYRA Product on the US-based crowdfunding platform www.kickstarter.com in June 2019, attracting substantial international media attention and success.

10. In November 2021, Spyra applied for the registration of the now federally registered SPYRA Copyright Registration in respect of the copyright embodied by the SPYRA products themselves (the "SPYRA Products").  The effective date of the SPYRA Copyright Registration is November 30, 2021.  An exemplary unit of the SPYRA Product was deposited with the United States Copyright Office and remains available for inspection there.  For ease of reference, please see below an exemplary SPYRA Product as marketed and/or sold on the original KickStarter campaign, still available for sale today, as part of the wider SPYRA Product range (also as shown below):



11. From June 2019 to the present, Plaintiff is and has been the official source of the genuine SPYRA Products in the United States, which include the following:











6





12. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the SPYRA Products. As a result, products bearing the name and mark "SPYRA" are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. Plaintiff markets its products using names and marks including "SPYRA," "SPYRAONE," "SPYRATWO," and "SPYRALX."

13. Plaintiff owns all rights, including without limitation, the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in various copyrights for the SPYRA Products as the owner of the

SPYRA copyright, including without limitation copyrights covered by the SPYRA Copyright Registration, as set out above.

## THE DEFENDANTS

14. Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within New York and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including New York, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit SPYRA products to consumers within the United States, including New York and in this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

15. The success of the SPYRA Products has resulted in significant counterfeiting. Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as AliExpress.com, Amazon.com, DHgate.com, eBay.com, GlobalSources.com, Joom.com, Made-in-China.com, Walmart.com, and Wish.com, including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit SPYRA products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2020 was over $1.3 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

16. On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online

retailers, outlet stores, or wholesalers selling genuine SPYRA products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

17. Plaintiff has not licensed or authorized Defendants to use the SPYRA Copyright Registration, and none of the Defendants are authorized retailers of genuine SPYRA Products.

18. On personal knowledge and belief, Defendants deceive unknowing consumers by using the SPYRA Copyright Registration without authorization within the product descriptions of their Defendant Internet Stores to attract customers, as well as embodied by the counterfeit products themselves.

19. On personal knowledge and belief, Defendants also deceive unknowing consumers by using the name and mark "Spyra" as originally used by Plaintiff in connection with the genuine SPYRA Products, within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for SPYRA Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine SPYRA Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable domain names and online marketplace accounts owned by Defendants that are the means by which the Defendants could continue to sell counterfeit SPYRA products into this District.

20. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names with incomplete information, randomly typed letters, or omitted cities or states, as Defendants here have done. And many Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

21. On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, the counterfeit SPYRA products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit SPYRA products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

22. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a

lawsuit.[1] Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[2] Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

23. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal and other financial accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

24. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the SPYRA Copyright Registration in connection with the advertisement, distribution, offering for sale, and sale of counterfeit SPYRA products into the United States and New York over the Internet, and by reference to the same "Spyra" name and mark by which the original SPYRA Product is marketed and sold. Each Defendant Internet Store

---

[1] *See* https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites") (last visited April 26, 2022).

[2] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. *See* https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited April 26, 2022).

offers shipping to the United States, including New York and, on information and belief, each Defendant has offered to sell counterfeit SPYRA products into the United States, including New York.

25. Defendants' use of the SPYRA Copyright Registration (as well as the name and mark "Spyra") in connection with the advertising, distribution, offering for sale, and sale of counterfeit SPYRA products, including the sale of counterfeit SPYRA products into New York, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**FIRST CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, et seq.)**
**[Against Defendants Designated in Schedule A]**

26. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–25 of this Complaint.

27. Plaintiff owns all exclusive rights, including without limitation the rights to reproduce the copyrighted work in copies, to prepare derivative works based upon the copyrighted work, and to distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending, in various copyrights for the SPYRA Products as the owner of the SPYRA copyright, including without limitation copyrights covered by the SPYRA Copyright Registration.

28. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the SPYRA copyright without Plaintiff's permission.

29. Defendants had access to the SPYRA Products incorporating Plaintiff's registered copyright before Defendants created their Defendant Internet Stores.

30. Upon information and belief, Defendants have directly copied Plaintiff's copyright for the SPYRA Products. Alternatively, Defendants' representations of Plaintiff's copyright for the SPYRA Products in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiff's copyright for the SPYRA Products and constitute unauthorized

copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyright for the SPYRA Products. As just one example, Defendants deceive unknowing consumers by using the SPYRA copyright without authorization within the product descriptions of their Defendant Online Store to attract customers as follows:



Counterfeit SPYRA sold on exemplary Defendant Internet Store

*compared to*



Genuine SPYRA, the subject of the federally registered SPYRA Copyright Registration

31. Defendants' exploitation of Plaintiff's copyright for the SPYRA Products in the Defendant Internet Stores constitutes infringement of Plaintiff's copyright for the SPYRA Products.

32. On information and belief, Defendants' infringing acts were willful, deliberate, and committed with prior notice and knowledge of Plaintiff's copyright. Each Defendant willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiff caused to be made and distributed in the United States, including this District, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of the infringing Defendant Online Stores. Each Defendant either knew, or should have reasonably known, that Plaintiff's SPYRA Products were protected by copyright and their representations infringed on Plaintiff's copyright. Each Defendant continues to infringe upon Plaintiff's rights in and to the copyrighted work.

33. As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. § 504.

34. In addition to Plaintiff's actual damages, Plaintiff is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b). Each Defendant should be required to account for all gains, profits, and advantages derived by each Defendant from their acts of infringement.

35. In the alternative, Plaintiff is entitled to, and may elect to choose statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement.

36. Plaintiff is entitled to, and may elect to choose, injunctive relief under 17 U.S.C. § 502, enjoining any use or exploitation by Defendants of their infringing work and for an order under 17 U.S.C. § 503 that any of Defendants' infringing products be impounded and destroyed.

37. Plaintiff seeks and is also entitled to recover reasonable attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

38. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of their well-known SPYRA copyright.

## SECOND CAUSE OF ACTION
### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))
### [Against Defendants Designated in Schedule A]

39. Plaintiff repeats and incorporate by reference herein its allegations contained in paragraphs 1–38 of this Complaint.

40. Defendants' promotion, marketing, offering for sale, and sale of counterfeit SPYRA products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit SPYRA products by Plaintiff.

41. By using the SPYRA mark in connection with the sale of counterfeit SPYRA products embodying the SPYRA Copyright Registration, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit SPYRA products.

42. Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit SPYRA products to the general public under 15 U.S.C. §§ 1114, 1125.

43. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## THIRD CAUSE OF ACTION
### UNFAIR COMPETITION (New York Common Law)
### [Against Defendants Designated in Schedule A]

44. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–43 of this Complaint.

45. Plaintiff has not licensed or authorized Defendants to use the SPYRA copyrights, and none of the Defendants are authorized retailers of genuine SPYRA Products.

46. Defendants knowingly and intentionally trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's SPYRA copyrights.

47. Defendants' promotion, marketing, offering for sale, and sale of counterfeit SPYRA products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit SPYRA product by Plaintiff.

48. Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of counterfeit SPYRA products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

49. On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

50. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the SPYRA Copyright Registration or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the

distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine SPYRA Product or is not authorized by Plaintiff to be sold in connection with the SPYRA Registered Copyright;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine SPYRA Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the SPYRA Copyright Registration;

c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit SPYRA products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the SPYRA Copyright Registration and damaging Plaintiff's goodwill;

e. otherwise competing unfairly with Plaintiff in any manner;

f. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which copy any Plaintiff copyright, including the SPYRA Copyright Registration or any reproductions, counterfeit copies, or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit SPYRA products; and

h. operating and/or hosting websites at the Defendant Internet Stores and any other domain names registered or operated by Defendants that are involved

with the distribution, marketing, advertising, offering for sale, or sale of any product embodying the SPYRA Copyright Registration or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine SPYRA Product or not authorized by Plaintiff to be sold in connection with the SPYRA Copyright Registration.

2. That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1 above;

3. Entry of an Order that, at Plaintiff's choosing, the registrant of the Defendant Internet Stores shall be changed from the current registrant to Plaintiff, and that the domain name registries for the Defendant Internet Stores, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Plaintiff's selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of Plaintiff's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

4. Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as Alibaba Group Holding Ltd., Alipay.com Co., Ltd., and any related Alibaba entities (collectively, "Alibaba"), Amazon, eBay, Joom, Newegg, and Made-in-China.com, social media platforms such as Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall:

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit SPYRA products embodying the SPYRA Copyright Registration, including any accounts associated with the Defendants listed on Schedule A;

    b.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit SPYRA products embodying the SPYRA Copyright Registration; and

    c.    take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index.

5. That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged.

6. In the alternative, that Plaintiff be awarded statutory damages of not less than $750 and not more than $30,000 for each and every infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 504(c), which should be enhanced to a sum of not more than $150,000 by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement;

7. That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8. Award any and all other relief that this Court deems just and proper.

[remainder of page left intentionally blank]

Dated: July 6, 2022                    Respectfully submitted,

                                                    COLE SCHOTZ P.C.

                                                    By: */s/ Michael R. Yellin*
                                                          Michael R. Yellin
                                                          1325 Avenue of the Americas
                                                          19th Floor
                                                          New York, New York 10017 (201)
                                                          525-6258 myellin@coleschotz.com

                                                          -and-

                                                          THOITS LAW
                                                          Nathan Monroe-Yavneh, Esq.
                                                          400 Main Street, Suite 250
                                                          Los Altos, CA 94022
                                                          (650) 327 4200
                                                          nmonroeyavneh@thoits.com

                                                          *Attorneys for Plaintiff*
                                                          *Spyra GmbH*