# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPYRA GmbH, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | ) Case No.: |
| | ) |
| THE INDIVIDUALS, CORPORATIONS, LIMITED | ) |
| LIABILITY COMPANIES, PARTNERSHIPS, AND | ) |
| UNINCORPORATED ASSOCIATIONS | ) |
| IDENTIFIED ON SCHEDULE A HERETO, | ) |
| | ) |
|     Defendants. | ) |
| | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF AN ORDER TO SHOW CAUSE WITH A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY TRANSFER OF CONTROL OVER THE DEFENDANT INTERNET STORES, A TEMPORARY ASSET RESTRAINT, AN ORDER FOR EXPEDITED DISCOVERY, AND GRANTING PERMISSION TO EFFECTUATE SERVICE OF PROCESS BY E-MAIL AND ELECTRONIC PUBLICATION**

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................1

II.   STATEMENT OF FACTS ........................................................................................3

    A.   Plaintiffs' Intellectual Property and Products ....... **Error! Bookmark not defined.**

    B.   Defendants' Unlawful Activities ................................................................4

        1.   Defendants Operate Legitimate-Looking Internet Stores. ..........................5

        2.   Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines. ................................................................5

        3.   Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down. ......................................................................6

        4.   Defendants Use Common Tactics to Evade Enforcement. .........................7

III.  ARGUMENT ..........................................................................................................8

    A.   This Court May Exercise Personal Jurisdiction Over Defendants ..........................9

    B.   Standard for Temporary Restraining Order and Preliminary Injunction ..............10

    C.   Plaintiffs Will Likely Succeed on the Merits ..........................................10

        1.   Plaintiffs Will Likely Succeed on Their Trademark Infringement and Counterfeiting Claim. .............................. **Error! Bookmark not defined.**

        2.   Plaintiffs Are Likely to Succeed on Their False Designation of Origin Claim. ...................................................... **Error! Bookmark not defined.**

        3.   Plaintiffs Will Likely Succeed on Their Copyright Infringement Claim. 10

        4.   Plaintiffs Are Likely to Succeed on Their New York Unfair Competition Claim. ................................................................12

    D.   There Is No Adequate Remedy at Law, and Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief. ........................................................13

    E.   The Balancing of Equities Tips in Plaintiffs' Favor. ...........................................15

    F.   Issuance of the Injunction Is in the Public Interest. .............................................16

IV.   THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE. .........................................17

    A.   A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiffs' Intellectual Property Is Appropriate. ........................................18

B.    Transferring the Defendant Domain Names to Plaintiffs' Control Is Appropriate. ...................................................................................................................18

C.    Preventing the Fraudulent Transfer of Assets Is Appropriate. ............................19

D.    Plaintiffs Are Entitled to Expedited Discovery. ...................................................21

E.    Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case.......................................................................................................................21

V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ..........................................25

VI.    CONCLUSION...............................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Performance Supply, LLC*,
   458 F. Supp. 3d 181 (S.D.N.Y. 2020)...............................................................................10, 15

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §
   30:40 (4th ed. 2013)........................................................................................................20

*AdMarketplace, Inc. v. TeeSupport Inc.*,
   2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013)........................................................................21

*Allstar Marketing Group, LLC v. 53 Romantic House Store*,
   2020 WL 6700481 (S.D.N.Y. Nov. 13, 2020)..................................................................2, 10

*Allstar Marketing Group, LLC v. Backforth Tradeltd*,
   2020 WL 6700503 (S.D.N.Y. Nov. 12, 2020)....................................................................2, 9

*American Greetings Corp. v. Kleinfab Corp.*,
   400 F. Supp. 228 (S.D.N.Y. 1975) ........................................................................................15

*Animale Grp. Inc. v. Sunny's Perfume Inc.*,
   256 F. App'x 707 (5th Cir. 2007) ...................................................................................19, 20

*Bd. of Directors of Sapphire Bay Condos. W. v. Simpson*,
   129 F. App'x 711 (3d Cir. 2005) ........................................................................................18

*Cengage Learning, Inc. v. Doe 1*,
   2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018) ........................................................... *passim*

*CJ Products LLC v. Snuggly Plushez LLC*,
   809 F. Supp. 2d 127 (E.D.N.Y. Aug. 22, 2011) ............................................................15, 16

*CJ Products v. Concord Toys*,
   2011 WL 178610 ...................................................................................................................17

*CSC Holdings, Inc. v. Redisi*,
   309 F.3d 988 (7th Cir. 2002) ...............................................................................................20

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)....................................................11

*Ford Motor Co. v. Lapertosa*,
   126 F. Supp. 2d 463 (E.D. Mich. 2000)................................................................................19

i

*Gucci America, Inc. Weixing Li,* No. 10 ..................................................................................20

*Hangzhou Chic Intelligent Technology Co. v. The Partnerships and*
 *Unincorporated Associations Identified on Schedule A, Defendants.,*
 2021 WL 1222783 (N.D. Ill. Apr. 1, 2021) ........................................................................24

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.,*
 560 F.2d 1325 (7th Cir. 1977) ...........................................................................................14

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,*
 219 F.3d 104 (2d Cir. 2000)................................................................................................16

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,*
 174 F.3d 411 (4th Cir. 1999) ..............................................................................................25

*Hudson Furniture, Inc. v. Mizrahi,*
 No. 20-Civ-4891, 2020 WL 5202118 (S.D.N.Y. Sept. 1, 2020) .......................................14

*Juniper Networks, Inc. v. Bahattab,*
 No. 1:07-cv-01771-PLF-AK, 2008 WL 250584 (D.D.C. Jan. 30, 2008) ...........................23

*Kaplan v. Stock Market Photo Agency, Inc.,*
 133 F. Supp. 2d 317 (S.D.N.Y. 2001).................................................................................13

*Kipling Apparel Corp. v. Rhys,*
 2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016)................................................................ *passim*

*Klipsch Grp., Inc. v. Big Box Store Ltd.,*
 2012 WL 4901407 (S.D.N.Y. Oct. 11, 2012)......................................................................20

*In re LDK Solar Secs. Litig.,*
 2008 WL 2415186 (N.D. Cal. Jun. 12, 2008)......................................................................24

*ISC-Bunker Ramo Corp. v. Altech, Inc.,*
 765 F. Supp. 1310 (N.D. Ill. 1990) .....................................................................................16

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,*
 51 F.3d 982 (11th Cir. 1995) .........................................................................................19, 20

*Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.,*
 2019 WL 7599931 (S.D.N.Y. May 29, 2019) ........................................................2, 9, 10, 18

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.,*
 312 F.3d 94 (2d Cir. 2002)..................................................................................................13

*Mister Softee, Inc. v. Tsirkos,*
 No. 14-CV-1975, 2015 WL 7458619 (S.D.N.Y. Nov. 23, 2015)...........................................14

*Nanya Tech. Corp. v. Fujitsu Ltd.*,
  No. 1:06-cv-00025, 2007 WL 269087 (D. Guam Jan. 26, 2007) ............................24

*Next Phase Distrib., Inc. v. John Does 1-27*,
  284 F.R.D. 165 (S.D.N.Y. 2012) ..............................................................21

*NYP Holdings v N.Y. Post Publ'g Inc.*,
  63 F. Supp. 3d 328 (S.D.N.Y. 2014).....................................................14, 16

*Pearson Education, Inc. v. Labos*,
  No. 19-Civ-0487, 2019 WL 1949820 (S.D.N.Y. Apr. 23, 2019) ......................14

*Philip Morris U.S.A., Inc. v. Otamedia Ltd.*,
  331 F. Supp. 2d 228 (S.D.N.Y. 2004).....................................................18

*Popular Enters., LLC v. Webcom Media Group, Inc.*,
  225 F.R.D. 560 (E.D. Tenn. 2004).....................................................23, 24

*Rathmann Grp. v. Tanenbaum*,
  889 F.2d 787 (8th Cir. 1989) ..............................................................25

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
  970 F.2d 552 (9th Cir. 1992) ..........................................................19, 20

*Rio Props., Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) .........................................................22, 23

*Shashi, Inc. v. Ramada Worldwide, Inc.*,
  No. 7:05-cv-00016, 2005 WL 552593 (W.D. Va. Mar. 1, 2005) ......................16

*Too, Inc. v. Kohl's Dep't Stores, Inc.*,
  210 F. Supp. 2d 402 (S.D.N.Y. 2002)...................................................12

*Ty, Inc. v. GMA Accessories, Inc.*,
  132 F.3d 1167 (7th Cir. 1997) ..........................................................14

*In re Vuitton et Fils, S.A.*,
  606 F.2d 1 (2d Cir. 1979)................................................................2

*Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian
  Gongsi*,
  2021 WL 1249631 (S.D.N.Y. April 5, 2021) ......................................2, 9, 18, 25

**Rules**

Fed. R. Civ. P. 4(f)(k)(3)....................................................9, 22, 23, 24

Fed. R. Civ. P. 26(b)(2)(f)...................................................................21

Fed. R. Civ. P. 65(b)(1)(c) ...............................................................................................8, 15, 17, 25

Fed. R. Civ. P. 65(d)(2)(C) .....................................................................................................3, 17, 21

**Statutes**

15 U.S.C. § 504 ...................................................................................................................................3

15 U.S.C. § 1116(a) .........................................................................................................................17

17 U.S.C. § 101 et seq. ......................................................................................................................9

17 U.S.C. § 501(b) ...........................................................................................................................11

17 U.S.C. §§ 502, 503 ....................................................................................................3, 13, 14, 17

17 U.S.C. § 504(b) ...........................................................................................................................20

28 U.S.C. § 1331 ................................................................................................................................9

28 U.S.C. §§ 1338(a)-(b) ..................................................................................................................9

28 U.S.C. § 1367(a) ...........................................................................................................................9

28 U.S.C. § 1391 ................................................................................................................................9

C.P.L.R. § 302(a)(1) ..........................................................................................................................9

C.P.L.R. § 302(a)(3) ..........................................................................................................................9

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

This application (the "Application") arises from Defendants'[1] improper marketing and sale of counterfeit products online. Plaintiff Spyra, GmbH ("Plaintiff" or "Spyra") markets a line of reversible plush toys sold under the SPYRA brand (the "SPYRA Products").   The SPYRA Products are the subject of Plaintiff's copyrights, which are covered by at least U.S. Copyright Office Registration No. VA 2-277-357, being a registration for the toy apparatus itself (the "SPYRA Copyright").

Defendants have trodden on Plaintiff's intellectual property rights by promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit versions of the SPYRA Products. This illicit conduct is being carried out through various online marketplace accounts listed in **Schedule A** to the Complaint (collectively, the "Defendant Internet Stores"). In short, Defendants run a counterfeiting operation with disregard for anything except generating profits.

Defendants, for their part, attempt to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff has filed this action to combat Defendants' infringement and counterfeiting of Plaintiff's registered copyrights, as well as to protect unknowing consumers from purchasing counterfeit SPYRA Products over the internet. In that regard, Plaintiffs seek to enjoin Defendants' ongoing unlawful activities, and Plaintiffs respectfully request that this Court issue *ex parte* relief, including:

(1) a temporary restraining order against defendants (as described in **Schedule A** attached to the Complaint ("Defendants")), enjoining Defendants from the manufacture, importation, distribution, offering for sale, and sale of counterfeit products bearing, using, or infringing upon Plaintiff's SPYRA Copyright (the "Counterfeit Products");

(2) a temporary transfer of control over the Defendant Internet Stores as identified on **Schedule A** to the Complaint), to Plaintiff;

(3) a temporary restraint of certain of Defendants' assets, described below, to preserve Plaintiff's right to an equitable accounting;

---

[1] "Defendants" are described in Schedule A attached to the Complaint.

    (4) expedited discovery allowing Plaintiff to inspect and copy Defendant's records relating to the manufacture, distribution, offering for sale, and sale of Counterfeit Products, as well as of Defendants' financial accounts;

    (5) permission to effectuate service by electronic mail and electronic publication; and

    (6) ordering Defendants to show cause why a preliminary injunction should not issue on the return date of the Application.

In light of the covert nature of offshore counterfeiting activities being undertaken by Defendants and the vital need to establish an economic disincentive for counterfeiting, courts regularly issue orders awarding such relief.[2]

Plaintiff's well-pleaded allegations, which are supported by the Declarations submitted in connection with the Application, make clear that such relief is necessary and proper. First, Plaintiff has demonstrated a strong likelihood of success on the merits. Plaintiff is the owner of valid a copyright registration and is the distributor of genuine SPYRA Products. Defendants' use of Plaintiff's copyright to sell Counterfeit Products has and continues to irreparably harm Plaintiff by diminishing Plaintiff's goodwill in its products, damaging Plaintiff's reputation, and causing consumer confusion. Monetary damages are inadequate to compensate Plaintiff for these harms. Defendants, by contrast, face no cognizable harm whatsoever if they are enjoined from continuing with their misconduct. This makes injunctive relief particularly appropriate in this matter.

Furthermore, issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Counterfeit Products. The public has a right to know what it is purchasing.

---

[2] *See, e.g., Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*, 2019 WL 7599931, (S.D.N.Y. May 29, 2019); *Cengage Learning, Inc. v. Doe 1*, 2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018); *Allstar Marketing Group, LLC v. Backforth Tradeltd,* 2020 WL 6700503 (S.D.N.Y. Nov. 12, 2020); *Kipling Apparel Corp. v. Rhys,* 2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016); *Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, 2021 WL 1249631 (S.D.N.Y. April 5, 2021); *Allstar Marketing Group, LLC v. 53 Romantic House Store*, 2020 WL 6700481 (S.D.N.Y. Nov. 13, 2020); *In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

In addition, an order authorizing the transfer of the Defendant Internet Stores to Plaintiff's control is warranted pursuant to 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed). Such relief will prevent the Defendants' continued use of online marketplaces to carry out acts of infringement.

Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as online marketplace platforms and financial institutions, that are in active concert with Defendants or who aid and abet Defendants and are given actual notice of the order. Further, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 504. Finally, an order authorizing service of process by e-mail and electronic publication is appropriate due to Defendants' intentional efforts to conceal their identities and covertly operate their business online. Serving Defendants electronically is the best—indeed, likely the only—method for notifying them of this action and providing them the opportunity to defend and present their objections.

Stated simply, the relief sought in this action is absolutely necessary to protect Plaintiff's legitimate interests in the SPYRA Copyright and SPYRA Products. Accordingly, Plaintiff respectfully requests entry of their proposed order in its entirety.

## II.    STATEMENT OF FACTS

### A.    Plaintiffs' Intellectual Property Protects Its Successful SPYRA Brand

Spyra markets the SPYRA Products, a line of next-generation electric toy water guns that fire precise "bullets" of water and have have earned an international reputation for innovation. *See* Declaration of Sebastian Walter filed concurrently herewith ("Walter Decl."), ¶¶ 5, 10. Spyra designed, invented, and caused to subsist in material form the original SPYRA Product from 2018 to 2019. *Id.* ¶ 6. It first published the original SPYRA Product on the US-based crowdfunding platform kickstarter.com in June 2019, attracting substantial international media attention and success. *Id.*

In November 2021, Spyra applied for the registration of the now federally registered SPYRA Copyright in respect of the copyright embodied by the SPYRA Products.  The effective date of the SPYRA Copyright is November 30, 2021.  *Id.* ¶ 7.

From June 2019 to the present, Plaintiff is and has been the official source of genuine SPYRA Products in the United States. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the SPYRA Products. *Id.* ¶¶ 8, 9. Plaintiff's promotional efforts include—by way of example but not limitation—substantial print media, the SPYRA website and social media sites, and point of sale materials. *Id.* ¶ 9. As a result, products bearing the name and mark "SPYRA" are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. *Id.* ¶ 10

Plaintiff owns all rights, including without limitation, the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in various copyrights for the SPYRA Products as the owner of the SPYRA copyright, including without limitation copyrights covered by the SPYRA Copyright, as set out above. *See id.* ¶ 7.

## B.     Defendants Are Counterfeiters of SPYRA Products

The success of the SPYRA Products has resulted in significant counterfeiting of the same. *Id.* ¶ 11. Plaintiff has identified numerous Defendant Internet Stores that sell Counterfeit Products from foreign countries to consumers in this Judicial District.  *Id.* ¶ 12.

Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and cost legitimate businesses billions in lost revenue annually. Declaration of Michael Yellin filed concurrently herewith ("Yellin Decl."), ¶ 3 and Ex. 1 thereto. According to intellectual-property-rights seizures-statistics reports issued by Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2020 was over $1.3 billion. *Id.* ¶ 4 and Ex. 2. Internet websites like the Defendant Internet Stores are

also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.* ¶ 5 and Ex. 3.

1.   Defendants Operate Legitimate-Looking Internet Stores

Defendants typically facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine SPYRA Products. Walter Decl. ¶ 20. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon.com ("Amazon"), and PayPal.com ("PayPal"). *Id.* ¶ 17. The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. *Id.* ¶ 23. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. *Id.* Plaintiff has not licensed or authorized Defendants to use the SPYRA Copyright and none of the Defendants is an authorized retailer of genuine SPYRA Products. *Id.* ¶ 24.

2.   Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines

Defendants also commonly deceive unknowing consumers by using the SPYRA brand without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the internet looking for websites relevant to consumer searches for SPYRA Products. *Id.* ¶ 25. Additionally, Defendants typically use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the listings for the Defendant Internet Stores show up at or near the top of relevant search results and misdirect consumers searching for genuine SPYRA Products. *Id.* Defendants often utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. *Id.* Lastly, Defendants also deceive unknowing consumers by using the name and mark SPYRA without

authorization within the product descriptions of their Defendant Internet Stores to attract customers. *Id.*

### 3.   Defendants Conceal Their Identities

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. *Id.* ¶ 26. For example, many of Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete, contain randomly typed letters, or fail to include cities or states. *Id.* Other Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. *Id.* Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* These are some of the many common tactics used by the Defendants to conceal their identities—and the full scope and interworking of their massive counterfeiting operation—to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. *Id.* ¶ 27. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. *Id.* In addition, Counterfeit Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source, suggesting that Defendants are interrelated. *Id.* ¶ 27. The Defendant Internet Stores also include other notable common features, including use of the same accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, user-defined variables, domain redirection, lack of contact information, identically or similarly priced hosting services, similar name servers, and the use of the same text and images. *Id.* ¶ 28.

4.    Defendants Evade Enforcement

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. *Id.* ¶ 29. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. *Id.* Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. *Id.* Rogue servers are notorious for ignoring take-down demands sent by brand owners. *Id.* Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. *Id.*

Additionally, counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as accounts on marketplace platforms such as Alibaba.com ("AliBaba"), AliExpress.com ("AliExpress"), Amazon.com ("Amazon"), eBay.com ("eBay"), Joom.com ("Joom"), Newegg.com ("Newegg"), and Made-in-China.com ("Made-in-China") behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts. *Id.* ¶ 30. Further, Defendants typically maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. *Id.* ¶ 30.

Overall, Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit Products for sale thereon, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. Upon information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with counterfeit versions of the SPYRA Copyright in the same transaction, occurrence, or series of transactions or occurrences.

As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to discover the

true identities of the Defendants, the exact interworking of the Defendants' counterfeiting network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiff intends to take appropriate steps to amend the Complaint.

## III. <u>ARGUMENT</u>

Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Plaintiff's reputation and the goodwill symbolized by the SPYRA Copyright. *See id.* ¶¶ 31-36. To stop Defendants' sale of Counterfeit Products, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, among other things, the transfer of the Defendant Internet Stores to Plaintiff to redirect to a website providing notice of these proceedings and the freezing of Defendants' assets. Without the relief requested by Plaintiff's Application, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with counterfeits of the SPYRA Copyright via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the Counterfeit Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the SPYRA Copyright and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will change to a new online store or platform and move any assets from U.S.-based bank accounts, including PayPal accounts. Courts have recognized that civil actions against counterfeiters present

special challenges that justify proceeding on an *ex parte* basis. *See, e.g.*, *Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, 2021 WL 1249631, at *2 (S.D.N.Y. Apr. 5, 2021) ("If Defendants are given notice of Plaintiffs' application, they are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of counterfeit and infringing products."); *Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*, 2019 WL 7599931, at *2 (S.D.N.Y. May 29, 2021) ("Defendants may easily and quickly transfer the registrations of their internet domain name, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiffs' ability to obtain meaningful relief."). As such, Plaintiffs respectfully request that this Court issue the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over the copyright infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the unfair competition claim in this action that arises under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

A.     **This Court May Exercise Personal Jurisdiction Over Defendants**

Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3), or in the alternative, Fed. R. Civ. P. 4(k) because the Defendant Internet Stores accept orders of Counterfeit Products from and offer shipping to New York addresses located in this Judicial District. Indeed, the Southern District of New York regularly exercises personal jurisdiction over websites using registered copyrights and/or trademarks without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to New York residents over the Internet. *Weili Fang and Chee Ray, LLC*, 2021 WL 1249631, at *1; *Allstar Marketing Group, LLC v. Backforth Tradeltd*, 2020 WL 6700503

(S.D.N.Y. Nov. 12, 2020) (preliminary injunction order after granting TRO); *Allstar Marketing Group, LLC v. 53 Romantic House Store*, 2020 WL 6700481 (S.D.N.Y. Nov. 13, 2020) (preliminary injunction order after granting TRO); *Lindsey Adelman Studio, LLC*, 2019 WL 7599931, at *1; *Cengage Learning, Inc. v. Doe 1*, 2018 WL 2244461, at *1 (S.D.N.Y. Jan. 17, 2018); *Kipling Apparel Corp. v. Rhys*, 2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016).

As detailed in the Complaint and in the Walter Decl., Plaintiffs' investigation into Defendants confirms that the Defendant Internet Stores allow for Counterfeit Products to be sold and shipped to addresses in this Judicial District. *See* Walter Decl. ¶¶ 15-17. In fact, Exhibit 2 to the Walter Decl. contains copies of screenshot from each Defendant Internet Store reflecting the marketing and ability to order Counterfeit Products to the Southern District of New York, and proof of orders actually placed and accepted by numerous Defendants to the Southern District of New York. For that reason alone, this Court can exercise personal jurisdiction over each of the Defendants.

### B.    Standard for Temporary Restraining Order and Preliminary Injunction

The standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020). A party seeking to obtain a either must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of an injunction; (3) that the balance of hardships favors the plaintiff; and (4) that the public interest will not be disserved if an injunction issues. *Id*.

When a party requests an *ex parte* temporary restraining order, the "Court must also determine whether '(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damages will result to the movant before the adverse party can be heard in opposition,' and '(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Cengage Learning, Inc. v. Doe 1*, 2018 WL 2244461, at *1 (S.D.N.Y. Jan. 17, 2018) (quoting Fed. R. Civ. P. 65(b)(1)).

### C.    Plaintiff Will Likely Succeed on the Merits

   1.    Plaintiff Will Likely Succeed on Its Copyright Infringement Claim.

10

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991). Copyright infringement, like trademark infringement, is a strict liability offense. *Spin Master*, 325 F.Supp.3d at 421.

Here, Plaintiff is likely to succeed on the merits of its copyright infringement claim. First, Plaintiff owns all exclusive rights in the copyrights for the SPYRA Products, including at least the copyright covered by U.S. Copyright Office Registration No. VA 2-277-357. Walter Decl. ¶ 7; *see* 17 U.S.C. § 501(b) (stating legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for any infringement).

Second, Plaintiff has shown that Defendants have made unauthorized copies of Plaintiff's works. Specifically, Defendants also deceive unknowing consumers by using the SPYRA Copyrights without authorization within the product descriptions of their Defendant Internet Stores to attract customers. *See* Walter Decl. ¶ 25. As a visual representation, Defendants have directly copied Plaintiff's copyrights for the SPYRA Products, or, alternatively, Defendants' representations of Plaintiff's copyrights for the SPYRA Products in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiff's copyrights for the SPYRA Products and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights for the SPYRA Products. As just one example, Defendants deceive unknowing consumers by using the SPYRA Copyrights without authorization within the product descriptions of their Defendant Online Store to attract customers as follows:

*Exemplary Images of Plaintiff's Registered Copyright Works*

11



*Compared to Exemplar Counterfeit* SPYRA *Product Sold by Defendants*



Complaint at ¶ 30.

Overall, it is clear that Defendants have copied Plaintiff's copyrights without Plaintiff's consent.

    2. <u>Plaintiff Is Likely to Succeed on Its New York Unfair Competition Claim.</u>

 "Unfair competition may be based on a wide variety of illegal practices, including misappropriation or other forms of 'commercial immorality.'" *Too, Inc. v. Kohl's Dep't Stores, Inc.*, 210 F. Supp. 2d 402, 405 (S.D.N.Y. 2002) (citing *Roy Export Co. Establishment of Vaduz, Liechtenstein v. CBS, Inc.,* 672 F.2d 1095, 1106 (2d Cir. 1982). Among other things, an unfair competition claim can be predicated on (i) the copying of another's work, along with the extra

element of (ii) defendant "fraudulently representing by word or act that defendant's goods are those of plaintiff . . . ." *Kaplan v. Stock Market Photo Agency, Inc.*, 133 F. Supp. 2d 317, 329 (S.D.N.Y. 2001) (citations omitted).

Plaintiff has demonstrated a likelihood of success on its unfair competition claim. First, as set forth above, Plaintiff has established a likelihood of success on the merits of its copyright claim. In addition, Plaintiff has demonstrated a likelihood of succeeding on its allegations that Defendants' deceived and defrauded consuming public including, for example by: (i) using SEO tactics and social media to misdirect customers seeking SPRYRA Products; (ii) use deceptive advertising practices within the text and metadata of their websites; (iii) taking other steps to deceive and confuse the consuming public. Plaintiff has, therefore, established a likelihood of success on the merits for its New York Unfair Competition claim.

**D.** **There Is No Adequate Remedy at Law, and Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

Irreparable harm warranting the issuance of a temporary restraining order exists when a defendant infringes either a copyright. Here, because Defendants have made unauthorized use of the SPYRA Copyright, Plaintiff has been irreparably harmed and will continue to be so harmed unless the Court enjoins Defendants' infringement.

In the context of copyright infringement, the Second Circuit has held that the harm to the plaintiff's property interest is irreparable in light of possible market confusion. *See Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96–97 (2d Cir. 2002) ("Since [the defendant] sells essentially the same product as [the plaintiff] to the same market, it will obviously suffer considerable loss if [the defendant] disseminates its [infringing products], because each sale of an [infringing product] probably results in one less sale of the [plaintiff's product]. [Plaintiff] thus satisfies the 'irreparable harm' prong of the preliminary injunction standard."); *see also* 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed).

Indeed, while loss of goodwill is "more commonly associated with trademark cases, [ ] it is applicable to copyright as well." *Ty, Inc. v. GMA Accessories, Inc*., 132 F.3d 1167, 1173 (7th Cir. 1997). In the Second Circuit, "court have found irreparable harm in copyright cases where the infringement 'would substantially diminish the value" of the work, "losses would be difficult to measure," and "monetary damages would be insufficient to remedy the harms.'" *Hudson Furniture, Inc. v. Mizrahi*, No. 20-Civ-4891, 2020 WL 5202118, at *6 (S.D.N.Y. Sept. 1, 2020) (citing *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012). It is well settled, for example, that using another's copyrights to create consumer confusion and loss of good will constitutes irreparable harm sufficient to satisfy the preliminary injunction standard. *Id.* ("harm to [] brand, "consumer confusion, and loss of goodwill . . . .constitute[] irreparable harm"); *Pearson Education, Inc. v. Labos*, No. 19-Civ-0487, 2019 WL 1949820, at *6 (S.D.N.Y. Apr. 23, 2019) (same); *see also Mister Softee, Inc. v. Tsirkos*, No. 14-CV-1975, 2015 WL 7458619, at *5 (S.D.N.Y. Nov. 23, 2015) (finding irreparable harm because "Plaintiffs have no actual control over the quality of Defendant's products or services"). *see also* 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed). Indeed, irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted).

Here, Defendants' unauthorized use of SPYRA Copyright, along with their substantial efforts to mislead and confuse consumers, have and continue to irreparably harm Plaintiff through diminished goodwill and brand confidence, reputational damage, loss of exclusivity, and loss of future sales. *See* Walter Decl. ¶¶ 31-36. The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *NYP Holdings v N.Y. Post Publ'g Inc*., 63 F. Supp. 3d 328, 341-42 (S.D.N.Y. 2014); *Ferragamo*, 2020 WL 774237, at *5. Indeed, the extent of the harm to a plaintiff

14

resulting from "[i]njecting the market with [copyright] counterfeit products will not only result in lost sales, but will impair plaintiffs' reputation achieved through considerable time and effort. This type of harm cannot be redressed by monetary damages available at law." *CJ Products LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. Aug. 22, 2011).

Plaintiffs will suffer immediate and irreparable injury, loss, or damage if an *ex parte* temporary restraining order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). *See* Walter Decl. ¶¶ 31-36. As such, Plaintiff should be granted the relief sought in this Application.

       **E.**    **The Balancing of Equities Tips in Plaintiffs' Favor**

If the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted*,* then it must next determine whether the balance of the hardships between the plaintiff and defendant, if an injunction issues, tips in the plaintiff's favor. *Cengage Learning*, 2018 WL 2244461, at *1.

"It would not be a 'hardship' for Defendant to refrain from engaging in unlawful activities related to [the Plaintiff's] brand." *3M Co.,* 458 F. Supp. 3d at 197; *WPIX, Inc. v. ivi, Inc.,* 691 F.3d 275, 287 (2d Cir. 2012) ("an […] infringer cannot complain about the loss of ability to offer its infringing product"). Rather, if a "defendant appears to be a brazen infringer," a defendant should receive little equitable consideration from the Court. *American Greetings Corp. v. Kleinfab Corp.*, 400 F. Supp. 228, 234 (S.D.N.Y. 1975); *see also Bulgari, S.p.A. v. Partnerships & Unincorporated Associations Identified On Schedule "A*,", No. 14-cv-4819, 2014 WL 3749132, at *6 (N.D. Ill. July 18, 2014) ("As willful infringers, Defendants are entitled to little equitable consideration"). In that regard, where the evidence shows that a defendant has knowingly engaged in infringing activities, it follows that [the defendant] is not legally harmed by the fact that it cannot continue" such misconduct, "even if this ultimately puts [the defendant] out of business. *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011), *aff'd*, 691 F.3d at 287. Indeed, "[i]t is axiomatic that

an infringer of copyright cannot complain about the loss of ability to offer its infringing product. *WPIX, Inc.*, 691 F.3d at 287 (citation omitted).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Counterfeit Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### F.      Issuance of the Injunction Is in the Public Interest.

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating copyright law and creating consumer confusion. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Plaintiff's approval and endorsement. An injunction serves the public interest in this case because "it will preserve the integrity of the copyright laws, which embody an important national policy of encouraging creativity*." ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1332 (N.D. Ill. 1990) (citation omitted).  Here, "it is uncontested that there exists a strong policy in favor of defending copyrights" and Plaintiff "assert[s] an action to enforce [its] U.S. copyrights, an area in which the U.S. has a strong public interest." *CJ Products v. Snuggly Plushez*, 809 F. Supp. 2d at 146.

Federal courts have long held that in addition to protecting the property right of an individual, intellectual property laws are also concerned with the protection of the public from being deceived. *NYC Triathlon*, 704 F. Supp. 2d at 344 ("[T]he public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."); *NYP Holdings*, 63 F. Supp. 3d at 342 (consumers have a "protectable interest in being free from confusion, deception and mistake"); *see also Shashi, Inc. v. Ramada Worldwide*, *Inc.,* No. 7:05-cv-00016, 2005 WL 552593, at \*4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion.").  Indeed, intellectual property "laws exist to protect the public from confusion." *See Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 107–08 (2d Cir. 2000); *see also ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp.

1310, 1332 (N.D. Ill. 1990) (injunction serves the public interest by preserving the integrity of the copyright laws). Moreover, "[i]n light of the significant public policy concerns regarding the sale and distribution of children's toys without any assurance or labels indicating that defendants' products comply with federal and state health and safety requirements, the public interest strongly favors plaintiffs". *CJ Products v. Concord Toys*, 2011 WL 178610, at *6.

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants. Unless Defendants' unauthorized use of the SPYRA Copyright is enjoined, the public will continue to be confused and misled by Defendants' conduct.

For these reasons, it is respectfully submitted that granting Application is in the public interest.

## IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.

In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark . . . ." 15 U.S.C. § 1116(a); *see also* 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed).

Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts here warrant such relief.

17

**A.**     **A Temporary Restraining Order Immediately Enjoining Defendants'
Unlawful Use of Plaintiff's Intellectual Property Is Appropriate.**

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the SPYRA Copyright on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the SPYRA Copyright and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the SPYRA Copyright.

The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit Products.

Many courts in this district have authorized immediate injunctive relief in similar cases involving the unauthorized use of intellectual property rights and counterfeiting. *See, e.g.*, *Weili Fang,* 2021 WL 1249631; *Lindsey Adelman Studio,* 2019 WL 7599931; *Cengage Learning,* 2018 WL 2244461*; Kipling Apparel Corp. v. Rhys,* 2016 WL 8814345 (S.D.N.Y. Feb. 12, 2016).

**B.**     **Transferring the Defendant Domain Names to Plaintiff's Control Is
Appropriate.**

As a part of the Temporary Restraining Order, Plaintiff also seeks temporary transfer of the Defendant Internet Stores to Plaintiff's control in order to disable the counterfeit websites and electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in intellectual property infringement cases involving domain names regularly grant the relief requested herein. *See, e.g., Philip Morris U.S.A., Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 246 (S.D.N.Y. 2004) (granting order transferring ownership of Defendant's domain names to Plaintiff); *Bd. of Directors of Sapphire Bay Condos. W. v. Simpson,* 129 F. App'x 711 (3d Cir. 2005) (affirming District Court's granting of the preliminary injunction ordering defendant to "cancel his registration of the domain name and refrain from using

18

the name, or any derivative thereof, for any Web site under his ownership or substantial control");
*Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463, 466 (E.D. Mich. 2000) (granting Plaintiff's
preliminary injunction because, among other things, "Defendant's misappropriation of the
goodwill [Plaintiff] has developed in the mark by registering the [infringing] Internet domain name
. . . significantly tarnishes [Plaintiff's] reputation").

As such, Plaintiff respectfully requests that, as part of the Temporary Restraining Order,
the Court require Alibaba, AliExpress, Amazon, eBay, Joom, Newegg, Made-in-China, and any
other marketplace platform or service provider hosting or servicing a Defendant Internet Store to
transfer such Defendant Internet Store to Plaintiff.

### C.     Preventing the Fraudulent Transfer of Assets Is Appropriate.

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an
equitable accounting of Defendants' profits from sales of Counterfeit Products is not impaired.
Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted
in this case, Defendants may disregard their responsibilities and fraudulently transfer financial
assets to overseas accounts before a restraint is ordered. Specifically, it appears that the Defendants
in this case hold most of their assets in foreign countries, making it easy to hide or dispose of
assets, which would render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a complaint
seeks relief in equity. *Cengage Learning,* 2018 WL 2244461, at *3 ("where plaintiffs seek both
equitable and legal relief in relation to specific funds, a court retains its equitable ower to freeze
assets") (internal quotations and citations omitted); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256
F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982,
987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters.*, *Inc.*, 970 F.2d 552, 559 (9th Cir.
1992). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of their
copyright infringement claim, so according to the Copyright Act, Plaintiff is "entitled to recover
the actual damages suffered . . . as a result of the infringement, and any profits of the infringer that
are attributable to the infringement and are not taken into account in computing the actual

19

damages." 17 U.S.C. § 504(b). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. *See Klipsch Grp., Inc. v. Big Box Store Ltd.,* 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012) ("Courts in this district have exercised their equitable authority powers in Lanham Act cases to restrain assets to preserve the return of profits derived from the sale of counterfeit goods and to insure counterfeiting [p]laintiffs the accounting to which they are entitled.") (collecting cases). Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

This District previously entered an asset restraining order in a counterfeiting case involving copyright claims brought by textbook publishers against defendants engaged in the sale of counterfeit textbooks through online marketplaces. *Cengage Learning,* 2018 WL 2244461, at *3-4. The Court, citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* at *3 (citing *Grupo Mexicano*, 527 U.S. at 324–26); *see also Gucci America, Inc. Weixing Li,* No. 10 Civ. 4974, 2011 WL 6156936, *3 (S.D.N.Y. Aug. 23, 2011), *aff'd in relevant part and vacated on other grounds*, 768 F.3d 122 (2d Cir. 2014) (same). Because the publishers sought an accounting of the defendants' profits, an equitable remedy, the Court found that it had the authority to freeze the defendants' assets. *Id.*; *see also Animale Grp. Inc.*, 256 F. App'x at 709; *Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l Ltd*, 970 F.2d at 559; *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question . . . were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013).

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### D.     Plaintiff Is Entitled to Expedited Discovery

"A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26(f) conference when authorized by a court order." *Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(d)(1)). "Courts in this District use a flexible standard of reasonableness and good cause when considering whether to grant an order." *Cengage*, 2018 WL 2244461 at *4 (citing *Next Phase Distrib*., 284 F.R.D. at 171.)

Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *AdMarketplace, Inc. v. TeeSupport Inc.,* 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (collecting cases). As described above, Defendants are using third-party payment processors such as Visa, PayPal, AliPay and Western Union, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment-system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). As Defendants have engaged in many deceptive practices to hide their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### E.     Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiffs request authorization to serve process by e-mail and by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents on a website to which the Defendant Internet Stores will be transferred (the "Link"). Plaintiff submits that providing notice via electronic publication and e-mail, along with any notice that Defendants receive from the online marketplace providers and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

More specifically, Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("*Rio*"). The Ninth Circuit in *Rio* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Likewise, in Plaintiff's experience with similar defendants in other matters, Defendants are almost certain to regularly rely on and use the e-mail addresses that the Defendants provide to Alibaba, AliExpress, Amazon, eBay, Joom, Newegg, Made-in-China, and other third-party payment processors in order to communicate concerning monies received through the Defendant Internet Stores. Thus, obtaining such e-mail addresses from Alibaba, AliExpress, Amazon, eBay, Joom, Newegg, Made-in-China, and other third-party payment processors is often times the fastest and most direct way to get into contact with individuals and entities like the Defendants that are engaged in the sale of counterfeit products. *See* Walter Decl. ¶ 21. Indeed, Defendants appear to rely primarily on electronic communications to communicate with their customers, demonstrating the reliability of this method of communication by which the Defendants may be apprised of the pendency of this action. Authorizing service of process solely via e-mail and/or electronic

publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously.

Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue this action because no other contact information is available for the Defendants.  Indeed, Defendants are likely to have provided false names and physical address information in their registrations for the Defendant Internet Stores in order to conceal their locations and avoid liability for their unlawful conduct.  *See* Walter Decl. ¶ 26.

Notably, a number of courts, including in this District, have held that alternative forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Rio*, 284 F.3d at 1018; s*ee also Cengage Learning,* 2018 WL 2244461, at *5 (finding email service appropriate under Rule 4(f)(3)); *Kipling Apparel Corp.,* 2016 WL 8814345, at *3 (ordering email service pursuant to Rule 4); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); s*ee also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, at *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017–18; other citations omitted) (holding that "in certain circumstances . . . service of process via electronic mail . . . is appropriate and may be authorized by the Court under Rule 4(f)(3)").

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio*, 284 F.3d at 1014-15. As the *Rio* court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* As such, this Court may allow Plaintiffs to serve the Defendants via electronic publication and/or e-mail.

In this case, Plaintiffs are unable to determine the exact physical whereabouts or identities of the Defendants. Plaintiffs, however, have good cause to suspect the Defendants are mainly residents of China. The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Hague Convention"). *See* Yellin Decl., ¶ 7. The Hague Convention does not preclude service by e-mail, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit e-mail service. *Id.*; *see also Hangzhou Chic Intelligent Technology Co. v. The Partnerships and Unincorporated Associations Identified on Schedule A, Defendants.*, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021) ("the Court finds it is inappropriate to interpret China's objections to postal service under the Hague Convention as encompassing service by email."). Additionally, according to Article 1 of The Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." Yellin Decl., ¶ 7 and Ex. 5; *Cengage Learning*, 2018 WL 2244461, at *5 (same).

As such, federal courts, including in this District, routinely permit alternative service of process notwithstanding the applicability of the Hague Convention. *See Cengage Learning,* 2018 WL 2244461, at *5; *Hangzhou Chic*, 2021 WL 1222783, at *4 ("[T]he Court finds that China has not 'objected' to email service, and the Court's order of email service pursuant to Rule 4(f)(3) was appropriate."); *see also In re LDK Solar Secs. Litig.,* 2008 WL 2415186, at *2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, at *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC*, 225 F.R.D. at 562 (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community").

In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process. *See* Yellin Decl., ¶ 8 and Ex. 6. The proposed Temporary Restraining Order

provides for issuance of a single original summons[3] in the name of "THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b). As such, Plaintiff respectfully requests this Court's permission to serve Defendants via e-mail and/or electronic publication.

In summary, Plaintiff respectfully submits that service of process by e-mail and by the creation of the Link is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections. Plaintiff, therefore, requests permission to serve the Summons, Complaint, the Order to Show Cause (upon entry), and any supporting papers by e-mail and publication of the Link.

## V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Five Thousand U.S. Dollars ($5,000.00). Plaintiffs submit that a bond in such amount is fair and reasonable under the circumstances. In fact, such a bond amount is consistent with the bond amounts required by courts in similar case. *See, e.g., Kipling Apparel Corp.*, 2016 WL 8814345, at *3 ($5,000 bond); *Cengage Learning*, 2018 WL 2244461, at *6 ($2,500 bond); *Weili Fang*, 2021 WL 1249631, at *6 ($1,000 bond).

---

[3] The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the Plaintiffs may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993).

VI.     **CONCLUSION**

Plaintiff's business, its SPYRA brand, and consumers are being irreparably harmed. Without entry of the requested relief, the sale of Counterfeit Products will continue to lead prospective purchasers and others to believe that Defendants' products have been manufactured by or emanate from Plaintiff. Therefore, entry of an *ex parte* order is necessary to protect Plaintiff's copyrights, to prevent further harm to Plaintiff and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiffs intend to present a motion for preliminary injunction.

Dated:     July 6, 2022                              Respectfully submitted,

                                                     COLE SCHOTZ P.C.

                                                     By:    */s/ Michael R. Yellin*
                                                          Michael R. Yellin
                                                          1325 Avenue of the Americas
                                                          19th Floor
                                                          New York, New York 10017
                                                          (201) 525-6258
                                                          myellin@coleschotz.com

                                                          -and-

                                                          THOITS LAW
                                                          Nathan Monroe-Yavneh, Esq.
                                                          400 Main Street, Suite 250
                                                          Los Altos, CA 94022
                                                          (650) 327-4200
                                                          nmonroeyavneh@thoits.com

                                                     *Attorneys for Plaintiff Spyra GmbH*